IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| KAY BELLAMY | : | CIVIL ACTION |
| --- | --- | --- |
| | : | NO. 12-6618 |
| v. | : | |
| | : | |
| WATERFRONT SQUARE | : | |
| CONDOMINIUMS, et al. | : | |

O'NEILL, J.                                                                                                                                   February 19, 2013

## **MEMORANDUM**

Now before me is a motion by defendants Waterfront Square Condominiums & Spa, Waterfront Square Homeowners' Association, Waterfront Square Condominium and Spa Master Association, GH Property Management, LLC and Miranda Milner to dismiss the complaint of plaintiff Kay Bellamy. For the reasons that follow, I will grant in part and deny in part defendants' motion.

## **BACKGROUND**

Plaintiff, an African-American female, alleges that she "worked for Defendant Entities for approximately 9 months."[1] Compl. ¶¶ 16-17. She asserts that defendant Milner, a Caucasian female and "a General Manager for Defendants," was her supervisor. Id. ¶ 18. Milner is alleged to have been "a decision maker concerning terms and conditions of employment for employees (including Plaintiff) of Defendant Entities including but not limited to hiring, firing, and issuing discipline." Id. ¶ 12. Plaintiff contends that "[w]hile under the supervision of Defendant Milner,

---

[1]      In their motion to dismiss, defendants contend that plaintiff was employed by defendant GH Property. Dkt. No. 9-1 at ECF p. 2. Defendant asserts that GH Property was the Property Manager for Waterfront Square Condominiums and Spa. Id.

Plaintiff was treated in a demeaning and derogatory manner unlike Plaintiff's non-black co-workers, including but not limited to being referred to as 'you people' when speaking to Plaintiff and other black employees (as well as in other derogatory ways)." Id. ¶ 19.  Plaintiff alleges that she "witnessed Defendant Milner's hostility towards black residents, as Defendant Milner refused to speak with black residents and instead directed their questions and concerns to Plaintiff or black employees of Defendants in general." Id. ¶ 20.  She further alleges that "Milner also attempted to eliminate Martin Luther King Day as an observed holiday expressing contempt for its inclusion as a holiday, even though the Waterfront Square Employee Handbook states that it is an observed holiday." Id. ¶ 21.  Plaintiff asserts that "Milner also treated Plaintiff in a discriminatory and disparate manner as compared to her male co-workers including but not limited to, denying her access to certain benefits that male co-worker's [sic] received." Id. ¶ 22.  Plaintiff contends that in or about April, 2012, she complained to Milner and other managers "that she was being subjected to discriminatory treatment based on her race and gender and that she wanted same to cease." Id. ¶ 23.  She alleges that after she registered her complaint "Milner began to exhibit even more hostility towards Plaintiff, including but not limited to interfering with her ability to successfully carry out her job duties." Id. ¶ 24.  Plaintiff asserts that "[o]n or about May 18, 2012, shortly after complaining of race and gender discrimination to Defendant Entities' management, including but not limited to Defendant Milner, Plaintiff was terminated by Defendants for allegedly 'not getting along with' Defendant Milner." Id. ¶ 25.  Plaintiff also alleges that defendants failed to properly provide her with notification regarding her COBRA benefits after she was terminated.  Id. ¶ 40-41.

      Plaintiff's complaint seeks relief including punitive damages for:  race discrimination, retaliation and hostile work environment in violation of 42 U.S.C. § 1981 (against all defendants)

(Count I); race discrimination, retaliation and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Against Defendant Company Only") (Count II); gender discrimination/retaliation in violation of Title VII ("Against Defendant Company Only") (Count III); and failure to give proper notice of COBRA benefits in violation of ERISA/COBRA, 29 U.S.C. § 1166 ("Against Defendant Entities Only") (Count IV).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 321 (3d Cir. 2008), quoting Twombly, 550 U.S. at 556. The Court of Appeals has made clear that after Ashcroft v. Iqbal, 556 U.S. 662 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009),

quoting Iqbal, 556 U.S. at 678.  The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

Id. at 210-11, quoting Iqbal, 556 U.S. at 679.  The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679.

## DISCUSSION

**I.      Counts I, II and III:  Race and Gender Discrimination, Retaliation and Hostile Work Environment**

    **A.      Discrimination (Race and Gender)**

Plaintiff "cannot simply intone the legal conclusion that [she] was subject to discrimination."  Johnson v. Dunkin' Donuts Franchising L.L.C., No. 11-1117, 2012 WL 1828028, at *21 (W.D. Pa. May 18, 2012) (citation omitted).  In the absence of direct evidence of discrimination, plaintiff may establish a prima facie case of discrimination under Title VII by alleging:  1) that she is a member of a protected class; 2) she was qualified for the position she held; 3) she suffered an adverse employment action; and 4) that the adverse employment action occurred under circumstances that give rise to an inference of discrimination.  Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003); see also McDonnell Douglas Corp. v. Green, 411

U.S. 792, 802 (1973).² "The central focus of the prima facie case is always whether the employer is treating some people less favorably than others because of their" membership in a protected class. Sarullo, 352 F.3d at 798. "[T]he substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII." Brown v. J. Kaz, Inc., 581 F.3d 175, 181-82 (3d Cir. 2009).

  1. **Race**

First, plaintiff's allegation that Milner used the term "you people" when speaking to plaintiff and other black employees is not enough on its own to constitute direct evidence of discrimination. See Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 269 (3d Cir. 2010) ("several courts have determined that the phrase 'you people' is too ambiguous to constitute direct evidence of discrimination when used in isolation, as it was here."). Accordingly, to withstand defendant's motion, plaintiff's allegations of race discrimination must be sufficient to show either that she was terminated under circumstances giving rise to an inference of discrimination or that similarly situated individuals not in her protected class were treated more favorably.

In her complaint, plaintiff alleges that she "believes and therefore avers that Defendant Entities discriminated against her and terminated her because of her race, and/or her complaints about race discrimination." Compl. ¶¶ 27, 32. On its own, this conclusory allegation cannot withstand defendant's motion to dismiss. See Flagg v. Control Data, 806 F. Supp. 1218, 1223 (E.D. Pa. 1992), aff'd, 998 F.2d 1002 (3d Cir. 1993) ("Conclusory allegations of generalized

---

² Plaintiff's complaint clearly alleges that she is a member of a protected class and that she suffered an adverse employment action. Compl. ¶¶ 16, 25. Her complaint does not explicitly allege that she was qualified for the position from which she was terminated. She does allege, however, that she worked for defendants for approximately nine months, allowing me to infer that she was qualified to perform her job for purposes of deciding the motion to dismiss. Compl. ¶ 17.

racial bias do not establish discriminatory intent."). Plaintiff contends, however, that the following allegations are sufficient to give rise to an inference of intentional discrimination: (1) that Milner referred to plaintiff and other black employees as "you people," Compl. ¶ 19, (2) that "Milner refused to speak with black residents and instead directed their questions and concerns to Plaintiff or black employees of Defendants in general," id. ¶ 20; (3) that Milner "attempted to eliminate Martin Luther King Day as an observed holiday" and "express[ed] contempt for its inclusion as a holiday," id. ¶ 21; and (4) that plaintiff was terminated "for allegedly 'not getting along with' Defendant Milner" "shortly after complaining o[f] race . . . discrimination to Defendant Entities' management. Id. ¶ 25.[3] "While any one of these allegations, taken alone, may not be sufficient to support an inference of discrimination, when taken together, and viewed in the light most favorable to [plaintiff], they are sufficient to support such an inference at this motion-to-dismiss stage." Dantzler-Hoggard v. Graystone Acad. Charter Sch., No. 12-0536, 2012 WL 2054779, at *8 (E.D. Pa. June 6, 2012). I will deny defendants' motion to dismiss plaintiff's race discrimination claims.

### 2. Gender

Plaintiff also alleges that "Defendant Entities discriminated against her . . . because of her gender." Compl. ¶ 36. She asserts "that she was denied benefits and/or compensation that was more accessible and/or provided to male coworkers as compared to her." Id. ¶ 37. She contends

---

[3] Plaintiff also contends that her discrimination claims are supported by her allegations that she was "subjected to a hostile work environment during her period of employment due to her race . . . through disparate treatment, pretextual admonishment, and demeaning and/or racially motivated treatment towards her." Compl. ¶¶ 28, 33. These are nothing more than "bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations" and are not sufficient on their own to defeat defendants' motion to dismiss. Abdallah v. Allegheny Valley Sch., No. 10-5054, 2011 WL 344079, at *2 (E.D. Pa. Feb. 1, 2011), citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

that "[d]uring plaintiff's employment with Defendant Entities, Defendant Milner also treated Plaintiff in a discriminatory and disparate manner as compared to her male co-workers, including but not limited to, denying her benefits that male co-worker's [sic] received." Id. ¶ 22. Plaintiff does not identify what benefits or compensation she was allegedly denied and does not identify any male coworkers who allegedly received superior benefits or compensation. Her gender discrimination allegations are nothing more than naked assertions or mere legal conclusions that are not entitled to an assumption of truth and must be disregarded. See Iqbal, 556 U.S. at 678. Therefore, I will dismiss plaintiff's gender discrimination claims with leave to amend. See Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 2000) (holding district court should not dismiss a plaintiff's claims "without either granting leave to amend or concluding that any amendment would be futile").

      B.      **Retaliation**

Plaintiff alleges that she complained of "race and gender discrimination to . . . management," and thereafter "Defendant Milner began to exhibit even more hostility towards Plaintiff, including but not limited to interfering with her ability to successfully carry out her job duties." Compl. ¶ 24. She then alleges that she was terminated "[o]n or about May 18, 2012, shortly after complaining of race and gender discrimination . . . ." Id. ¶ 25. I find that these allegations are sufficient, if only just barely, to withstand defendant's motion to dismiss her retaliation claim.

To state a claim for retaliation, plaintiff must show that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. See Moore v. City of Phila., 461 F.3d 331, 340-41 (3d

Cir. 2006) (Title VII retaliation); Miller v. Thomas Jefferson Univ. Hosp., No. 11-0023, 2012 WL 5829752, at *8 (E.D. Pa. Nov. 15, 2012) (Section 1981 retaliation).

> In determining whether conduct was retaliatory, our cases have tended to focus on two factors: (1) the temporal proximity between the protected activity and the alleged discrimination and (2) the existence of a pattern of antagonism in the intervening period. . . . Timing alone raises the requisite inference when it is unusually suggestive of retaliatory motive, but even if temporal proximity . . . is missing, courts may look to the intervening period for other evidence of retaliatory animus. . . . Despite this focus, these are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference.

Farmer v. Aramark Corp., No. 11-5621, 2012 WL 346688, at *5 (E.D. Pa. Feb. 3, 2012) (internal quotations and citations omitted). Plaintiff's allegations that she was terminated "shortly after complaining of race and gender discrimination," Compl. ¶ 25, and that Milner "interfer[ed] with her ability to successfully carry out her job duties" after plaintiff registered her complaints of race and gender discrimination, id. ¶ 24, are sufficient to plead the requisite causal link between her termination and her alleged complaints to management. "Although . . . there are certainly questions whether [plaintiff's] allegation establish 'temporal proximity' and 'a pattern of antagonism in the intervening period,' such issues can be developed further in discovery and addressed again in a summary judgment motion." Farmer, 2012 WL 346688 at *6 (citation omitted). I will deny defendants' motion to dismiss plaintiff's retaliation claims with leave to amend.

### C. Hostile Work Environment (Race Only)

To establish her prima facie case for her hostile work environment claims, plaintiff must show that (1) she suffered intentional discrimination because of her race; (2) the discrimination was severe or pervasive; (3) it detrimentally affected her; (4) it would have detrimentally

-8-

affected a reasonable person in like circumstances; and (5) there is a basis for employer liability. See Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001), citing Andrews v. City of Phila., 895 F.2d 1469, 1482 (3d Cir. 1990).[4] The requirements are the same for hostile work environment claims brought under both § 1981 and Title VII. See Griffin v. Harrisburg Prop. Servs., Inc., 421 F. App'x 204, 207 n.3 (3d Cir.2011) ("The elements of a racially hostile work environment are the same under Title VII and § 1981.") "'[H]ostile work environment' harassment must be pervasive or severe enough 'to alter the conditions of . . . employment and create an abusive working environment." Meritor Sav. Bank FSB v. Vinson, 477 U.S. 57, 61 (1986), quoting Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982).

> Workplace conduct is not measured in isolation; instead, whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270 (2001) (internal citations and quotations omitted). "[O]ccasional insults, teasing, or episodic instances of ridicule are not enough." Jensen v. Potter, 435 F.3d 444, 451 (3d Cir. 2006), overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).

Under this standard, I find that plaintiff has failed to state a hostile work environment claim. She alleges generally that she "was [ ] subjected to a hostile work environment during her period of employment due to her race and/or complaints of racial discrimination through disparate treatment, pretextual admonishment, and demeaning and/or racially motivated

---

[4] While the Andrews Court stated that the discrimination in question must have been "pervasive and regular," in 2006 the Court of Appeals adopted the "severe or pervasive standard" followed by the United States Supreme Court. See Jensen v. Potter, 435 F.3d 444, 449 n.3 (3d Cir. 2006), citing Pa. State Police v. Suders, 542 U.S. 129, 133 (2004).

treatment towards her." Compl. ¶¶ 28, 33. Plaintiff's only specific factual allegations are that Milner referred to plaintiff and other black employees as "you people," Compl. ¶ 19, "refused to speak with black residents and instead directed their questions and concerns to Plaintiff or black employees of Defendants in general," id. ¶ 20; and "attempted to eliminate Martin Luther King Day as an observed holiday" and "express[ed] contempt for its inclusion as a holiday," id. ¶ 21. Absent any allegations concerning the frequency of Milner's alleged offensive remarks or specific facts from which the Court may infer that Milner's alleged conduct unreasonably interfered with plaintiff's performance at work, I find that the conduct alleged is not sufficiently severe and pervasive to evidence the requisite change in the conditions of plaintiff's work environment. I will dismiss plaintiff's hostile work environment claims with leave to amend.

### E. Punitive Damages

Defendants ask that I dismiss plaintiff's request for an award of punitive damages for her Section 1981 and Title VII claims. In a Title VII case, a plaintiff may be entitled to punitive damages when her employer engages in discriminatory practices with "malice or reckless indifference to the federally protected rights of an individual." 42 U.S.C. § 1981(b)(1); Kolstad v. American Dental Ass'n, 527 U.S. 526, 534 (1999). "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." Id. at 535. "An individual who establishes a cause of action under § 1981 is entitled to both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages." Johnson v. Ry. Exp. Agency, Inc., 421 U.S. 454, 460 (1975). "'[A]ny case law construing the punitive damages standard set forth in [Title VII cases] is equally applicable to clarify the common law punitive damages standard with respect to a § 1981 claim.'" Goodwin v. Fast Food Enters. No. 3, LLP,

No. 10-23, 2012 WL 1739830, at *5 n.1 (W.D. Pa. May 16, 2012) (second alteration in original), quoting Lowery v. Circuit City Stores, Inc., 206 F.3d 431, 441 (4th Cir. 2000).

Plaintiff asserts that she has sufficiently pled her entitlement to punitive damages because, as alleged, a factfinder could conclude that defendants' conduct "is outrageous." Dkt. No. 14 at ECF p. 18. However, I agree with defendants that "[p]laintiff's [c]omplaint does not set forth any facts that [d]efendants had knowledge that they were acting in violation of federal law" and lacks "appropriate allegations of malice or reckless indifference." Dkt. No. 9-1 at ECF p. 7-8. As a result, I will dismiss plaintiff's request for punitive damages with leave to amend.

## II.  Count IV: Violations of ERISA/COBRA

In Count IV of her complaint, plaintiff alleges that she suffered harm because defendants failed to properly provide her with notification of her rights under the Consolidated Omnibus Budget Reconciliation Act. Compl. ¶¶ 40-42. COBRA requires employers to offer continued health insurance coverage, at the employee's expense, to an employee who participates in a group health plan when that employee would otherwise lose coverage due to some qualifying event. 29 U.S.C. § 1161. Employers must provide their benefits plan administrator with notice of any qualifying event concerning a covered employee within thirty days of that qualifying event, and the plan administrator then must notify the qualified individual of his rights under COBRA within fourteen days of receiving that notice. 29 U.S.C. § 1166(a)(4).[5] A "covered employee" is "an individual who is (or was) provided coverage under a group health plan by virtue of the performance of services by the individual for 1 or more persons maintaining the plan . . . ." 29 U.S.C. § 1167(2).

---

[5] The Court has discretion to impose a penalty for COBRA notice violations. See 29 U.S.C. § 1132(c)(1).

I will dismiss Count IV of plaintiff's complaint because she fails to plead that she was a COBRA covered employee, <u>i.e.</u> that she was receiving health benefits from any of the defendants at the time of her termination.  <u>See</u> <u>Yahaya v. Maxim Health Care Servs. Inc.</u>, No. 10-5557, 2012 WL 6203785, at *15 (D.N.J. Dec. 12, 2012) ("as Plaintiff was not a covered employee under COBRA, he was not entitled to notice of benefits when he was terminated").  To the extent that plaintiff is able to allege sufficient facts to show that she was a COBRA covered employee, she may amend her complaint.

An appropriate Order follows.