IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAY BELLAMY | : | CIVIL ACTION |
| | : | NO. 12-6618 |
| v. | : | |
| | : | |
| WATERFRONT SQUARE | : | |
| CONDOMINIUMS & SPA, et al. | : | |

O'NEILL, J.                                                                                                  May 29, 2013

## MEMORANDUM

Now before me is a motion by defendants Waterfront Square Condominiums & Spa, Waterfront Square Homeowners' Association, Waterfront Square Condominium and Spa Master Association, GH Property Management, LLC and Miranda Milner to dismiss the amended complaint of plaintiff Kay Bellamy pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and for partial summary judgment pursuant to Rule 56(c) (Dkt. No. 20) and plaintiff's response thereto (Dkt. No. 21). For the reasons that follow, I will grant in part and deny in part defendants' motions.

## BACKGROUND

Plaintiff, an African-American female, alleges in her amended complaint that she "worked for Defendant Entities for approximately 9 months."[1] Dkt. No. 17 at ¶¶ 16-17. During her employment, "Plaintiff worked in the management office." Id. at ¶ 26. She asserts that defendant Milner, a Caucasian female and "a General Manager for Defendants," was her supervisor. Id. at ¶ 18. According to plaintiff, "[t]he only people who worked in the management office with plaintiff during her employment with Defendant Entities were

---

[1] In their motion, defendants again contend that plaintiff was employed by defendant GH Property. Dkt. No. 20-1 at ECF p. 3. Defendants asserts that GH Property was the Property Manager for Waterfront Square Condominiums and Spa. Id.

Defendant Milner and a male co-worker." Id. at ¶ 27.  Milner is alleged to have been "a decision maker concerning terms and conditions of employment for employees (including Plaintiff) of Defendant Entities including but not limited to hiring, firing, and issuing discipline." Id. at ¶ 12. Milner was "aware of" and "required to follow" defendants' "anti-harassment policy indicating that no employee is to discriminate against another employee on the basis of his/her race or gender" and defendants' "policy indicating that no retaliatory action is to be taken against an employee for complaining of discrimination." Id. at ¶¶ 19-21.  These policies were in a handbook maintained by defendants.  Id. at ¶¶ 19-20.

Alleging gender discrimination and retaliation, plaintiff contends that "throughout [her] employment, Defendant Milner treated Plaintiff in a discriminatory and disparate manner as compared to her male co-worker who worked in the management office with her, including but not limited to, denying [her] access to certain benefits that her male co-worker received." Id. at ¶ 28.  Plaintiff alleges that the benefits she was denied "included but were not limited to allowing Plaintiff's male co-worker to buy work clothes and get his work clothes dry cleaned at Defendant Entities' expense." Id. at ¶ 29.  Plaintiff also asserts that "while under the supervision of Defendant Milner, [she] also witnessed Defendant Milner's hostility towards other female co-workers.  For example, . . . Plaintiff only ever witnessed Defendant Milner terminate female employees." Id. at ¶ 30.

Plaintiff also contends that she was subjected to race-based discrimination, retaliation and a hostile work environment.  She asserts that "[w]hile under the supervision of Defendant Milner, Plaintiff was treated in a demeaning and derogatory manner unlike Plaintiff's non-black co-workers, including but not limited to being referred to as 'you people' on a frequent basis when speaking to Plaintiff and other black employees (as well as in other derogatory ways)." Id.

at ¶ 22.  She asserts that, "unlike [her] non-black co-workers, Defendant Milner would curse at and call Plaintiff and other black employees 'idiots' on a daily basis." Id. at ¶ 23.  Plaintiff alleges that she "witnessed Defendant Milner's hostility towards black residents, as Defendant Milner refused to speak with black residents and instead directed their questions and concerns to Plaintiff or black employees of Defendants in general." Id. at ¶ 24.  She further alleges that "Milner also attempted to eliminate Martin Luther King Day as an observed holiday expressing contempt for its inclusion as a holiday, even though the Waterfront Square Employee Handbook states that it is an observed holiday." Id. at ¶ 25.

Plaintiff contends that in or about April 2012, she complained to Milner and other managers "that she was being subjected to discriminatory treatment based on her race and gender and that she wanted same to cease." Id. at ¶ 31.  She asserts that defendants' "management failed to investigate and/or resolve [her] complaints of gender and race discrimination." Id. at ¶ 32.  Plaintiff further alleges that after she registered her complaints, defendants' "management, including but not limited to Defendant Milner, began to exhibit even more hostility towards Plaintiff and conspired to terminate plaintiff by interfering with her ability to successfully carry out her job duties." Id. at ¶ 33.  Plaintiff asserts that "[o]n or about May 18, 2012, shortly after complaining of race and gender discrimination to Defendant Entities' management, including but not limited to Defendant Milner, Plaintiff was terminated by Defendants for allegedly 'not getting along with' Defendant Milner." Id. at ¶ 34.

Plaintiff seeks relief including punitive damages for:  gender discrimination/retaliation in violation of Title VII ("Against Defendant Company Only") (Count III); race discrimination, retaliation and hostile work environment in violation of 42 U.S.C. § 1981 (against all defendants) (Count I); and race discrimination, retaliation and hostile work environment in violation of Title

VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Against Defendant Company Only") (Count II).[2]

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Id. at 556. The Court of Appeals has made clear that after Ashcroft v. Iqbal, 556 U.S. 662 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556

---

[2] Also, in Count IV of plaintiff's amended complaint she alleges violations of her rights under the Consolidated Omnibus Budget Reconciliation Act and the Employee Retirement Income Security Act. Defendant has moved for summary judgment only with respect to Count IV. In her response to defendants' motion, plaintiff asserts that she is "withdrawing her claims under COBRA and ERISA in an attempt to limit her claims for litigation." Dkt. No. 21 at ECF p. 5 n.3. I will dismiss Count IV of plaintiff's complaint with prejudice and will deny defendant's motion for summary judgment as moot.

U.S. at 678.  The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

Id. at 210-11, quoting Iqbal, 556 U.S. at 679.  The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679, quoting Fed. R. Civ. P. 8(a)(2).

## DISCUSSION

### I.  Gender Discrimination and Retaliation

Defendant asserts that Count III of plaintiff's first amended complaint, which bears the subheading "Gender Discrimination/Retaliation," should be dismissed because she does not allege facts sufficient to support an inference of discrimination.  Dkt. No. 20-1 at ECF p. 11. Plaintiff "cannot simply intone the legal conclusion that [she] was subject to discrimination." Johnson v. Dunkin' Donuts Franchising L.L.C., No. 11-1117, 2012 WL 1828028, at *21 (W.D. Pa. May 18, 2012) (citation omitted).[3]  In the absence of direct evidence of discrimination, plaintiff may establish a prima facie case of discrimination by alleging:  1) that she is a member of a protected class; 2) she was qualified for the position she held; 3) she suffered an adverse

---

[3] "[T]he substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII."  Brown v. J. Kaz, Inc., 581 F.3d 175, 181-82 (3d Cir. 2009).

employment action; and 4) that the adverse employment action occurred under circumstances that give rise to an inference of discrimination. Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). [4] Plaintiff "must establish some causal nexus between [her] membership in a protected class" and the adverse employment decision complained of. Sarullo, 352 F.3d at 798. "The central focus of the prima facie case is always whether the employer is treating some people less favorably than others because of their" membership in a protected class. Id. (citations and quotations omitted).

In Count III, plaintiff alleges that defendants "discriminated against her and terminated her because of her gender, and/or her complaints about gender discrimination." Dkt. No. 17 at ¶ 45. Plaintiff contends that "she was denied benefits and/or compensation that was more accessible and or/provided to male coworkers as compared to her." Id. at ¶ 46. She asserts that throughout her employment, "Milner treated [her] in a discriminatory and disparate manner as compared to her male co-worker who worked in the management office with her . . . ." Id. at ¶ 28. Specifically, she contends that her unidentified male co-worker was allowed "to buy work clothes and get his work clothes dry cleaned at Defendant Entities' expense" and that "Milner denied Plaintiff's request to do the same." Id. at ¶ 29. Plaintiff also contends that she "witnessed Defendant Milner's hostility towards other female co-workers. For example, . . . Plaintiff only ever witnessed Defendant Milner terminate female employees." Id. at ¶ 30.

I find that the allegations of gender-based preferential treatment and retaliation in plaintiff's amended complaint are insufficient to withstand defendants' motion to dismiss. With

---

[4] Plaintiff's complaint clearly alleges that she is a member of a protected class and that she suffered an adverse employment action. Dkt. No. 17 at ¶¶ 16, 34. Her complaint does not explicitly allege that she was qualified for the position from which she was terminated. She does allege, however, that she worked for defendants for approximately nine months, allowing me to infer that she was qualified to perform her job for purposes of deciding the motion to dismiss. Id. at ¶ 17.

respect to her allegation that she was denied the purchase and dry cleaning of her work clothes, she does not allege facts (e.g., a reference to a policy in an employee handbook) to support a finding that she was entitled to the purchase and dry cleaning of work clothes as a benefit of her employment. Further, she provides no other allegations concerning the denial of any other benefits owed to her that were provided to male employees. Finally, although she alleges that she only witnessed the termination of female employees, she does not allege that defendants terminated those unidentified female employees without any reason for doing so other than their gender. Nor does she contend that male employees were not fired (she alleges only that she did not herself witness the termination of male employees). Plaintiff's complaint does not allege sufficient facts to show the requisite "causal nexus" between defendants' actions and her gender. Sarullo, 352 F.3d at 798. Therefore, I find that she has not "raise[d] a right to relief above the speculative level," Twombly, 550 U.S. at 555, and I will dismiss Count III of her amended complaint.[5]

## II.     Race-Based Hostile Work Environment

Defendants contend that plaintiff's hostile work environment claims should be dismissed because they are not accompanied by sufficient facts to suggest a plausible violation of Section 1981 or Title VII. Dkt. No. 20-1 at ECF p. 9. The requirements are the same for hostile work environment claims brought under both Section 1981 and Title VII. See Griffin v. Harrisburg Prop. Servs., Inc., 421 F. App'x 204, 207 n.3 (3d Cir. 2011) (citations omitted) ("The elements

---

[5] "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008). I will dismiss with prejudice plaintiff's claims of discrimination and retaliation based on her gender because she has already had an opportunity to amend her complaint, there is nothing in the record to suggest that allowing her to further amend would be anything but futile and to allow further amendment would be inequitable to defendants who have already twice moved for dismissal of these claims.

of a racially hostile work environment are the same under Title VII and § 1981."). To establish her prima facie case for her hostile work environment claims, plaintiff must show that (1) she suffered intentional discrimination because of her race; (2) the discrimination was severe or pervasive; (3) it detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) there is a basis for employer liability. See Andrews v. City of Phila., 895 F.2d 1469, 1482 (3d Cir. 1990).[6] "To be actionable, 'the harassment must be so severe or pervasive that it alters the conditions of the victim's employment and creates an abusive environment.'" Grassmyer v. Shred-It USA, Inc., 392 F. App'x 18, 30 (3d Cir. 2010), quoting Weston v. Pennsylvania, 251 F.3d 420, 425-26 (3d Cir. 2000).

> Workplace conduct is not measured in isolation; instead, whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270-71 (2001) (internal citations and quotations omitted). "[O]ccasional insults, teasing, or episodic instances of ridicule are not enough." Jensen v. Potter, 435 F.3d 444, 451 (3d Cir. 2006), overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006). "Although the bar for establishing severe or pervasive discrimination is relatively high, the determination of what constitutes severe or pervasive does not lend itself to a mathematically precise test." Booker v.

---

[6] While the Andrews Court stated that the discrimination in question must have been "pervasive and regular," in 2006 the Court of Appeals adopted the "severe or pervasive standard" articulated by the United States Supreme Court. See Jensen v. Potter, 435 F.3d 444, 449 n.3 (3d Cir. 2006), overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006). .

Nat'l R.R. Passenger Corp., 880 F. Supp. 2d 575, 582 (E.D. Pa. 2012) (citations and internal quotations omitted).

Under this standard, and viewing the allegations in the complaint in the light most favorable to plaintiff, I find that they are sufficient, if barely, to state a claim for a hostile work environment. Plaintiff alleges generally that she "was [ ] subjected to a hostile work environment during her period of employment due to her race and/or complaints of racial discrimination through disparate treatment, pretextual admonishment, and demeaning and/or racially motivated treatment towards her." Dkt. No. 17 at ¶¶ 37, 42. On its own, this allegation consists of nothing more than bare legal conclusions and is not sufficient to allow plaintiff's complaint to withstand defendants' motion to dismiss. Plaintiff also claims that after making her complaints of race and gender discrimination, defendants "began to exhibit even more hostility towards Plaintiff and conspired to terminate Plaintiff by interfering with her ability to successfully carry out her job duties." Id. at ¶ 33. Again, on its own, this allegation would not be sufficient to support her hostile work environment claims. Plaintiff does not allege how defendants exhibited such hostility nor does she provide any facts to support her allegation that defendants interfered with her ability to work.

Plaintiff now alleges however, that "unlike Plaintiff's non-black co-workers, Defendant Milner would curse at and call Plaintiff and other black employees 'idiots' on a daily basis." Id. at ¶ 23. Plaintiff has also amended her allegation that Milner referred to plaintiff and other black employees as "you people" and "in other derogatory ways," adding that Milner did so "on a frequent basis" Id. at ¶ 22. Plaintiff's remaining factual allegations are unchanged from her initial complaint: that Milner "refused to speak with black residents and instead directed their questions and concerns to Plaintiff or black employees of Defendants in general," id. at ¶ 24; and

"attempted to eliminate Martin Luther King Day as an observed holiday" and "express[ed] contempt for its inclusion as a holiday." Id. at ¶ 25. As amended and viewed in their entirety, I find that plaintiff's allegations that she was subjected to a hostile work environment due to her race are sufficient to withstand defendants' motion to dismiss. Her allegations support a plausible claim that she was subjected to a "complex tapestry of discrimination" that was "severe and pervasive enough to constitute a hostile work environment." Grasty v. World Flavors, Inc., No. 11-1778, 2011 WL 3515864, at *8 (E.D. Pa. Aug. 11, 2011) (quotations omitted). Therefore I will deny defendants' motion to dismiss the hostile work environment claims set forth in Counts I and II of plaintiff's amended complaint.

### III.     Punitive Damages

Defendants ask that I dismiss plaintiff's request for an award of punitive damages for her Section 1981 and Title VII claims. "An individual who establishes a cause of action under § 1981 is entitled to both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages." Johnson v. Ry. Exp. Agency, Inc., 421 U.S. 454, 460 (1975). "'[A]ny case law construing the punitive damages standard set forth in [Title VII cases] is equally applicable to clarify the common law punitive damages standard with respect to a § 1981 claim.'" Goodwin v. Fast Food Enters. No. 3, LLP, No. 10-23, 2012 WL 1739830, at *5 n.1 (W.D. Pa. May 16, 2012) (second alteration in original), quoting Lowery v. Circuit City Stores, Inc., 206 F.3d 431, 441 (4th Cir. 2000). In a Title VII case, a plaintiff may be entitled to punitive damages when her employer engages in discriminatory practices with "malice or reckless indifference to the federally protected rights of an individual." 42 U.S.C. § 1981(b)(1); Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 534 (1999). "The terms 'malice' or 'reckless indifference'

pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." Kolstad, 527 U.S. at 535.

Although the facts alleged in plaintiff's amended complaint "do not appear to be glaring examples of obvious malice or reckless indifference on the part of [d]efendant[s]," Taylor v. Harrisburg Area Cmty. Coll., No. 12-0169, 2012 WL 1886721 (M.D. Pa. May 23, 2012), I conclude that her allegations are now sufficient to support a finding that further development of the record is required on the question of whether Plaintiffs punitive damages claim is sustainable. With respect to her race-based claims, plaintiff sufficiently avers that Milner violated her rights under Title VII and Section 1981, see, e.g., Dkt. No. 17 at ¶¶ 22-25, that she complained to defendants about Milner's conduct, id. at ¶ 31, that defendants "maintain[ed] a handbook that contains an anti-harassment policy indicating that no employee is to discriminate against another employee on the basis of his/her race," id. at ¶ 19, and "a policy indicating that no retaliatory action is to be taken against an employee for complaining of discrimination," id. at ¶ 20, and that despite having such policies, defendants "failed to investigate and/or resolve" her complaints. Id. at ¶ 32. Viewing the facts alleged in the amended complaint in the light most favorable to plaintiff, I will allow her claims for punitive damages to proceed with respect to the claims set forth in Counts I and II of her amended complaint.

## IV. Claims Against Milner

Defendants ask that I dismiss plaintiff's claims against Milner.[7] I will not dismiss her Section 1981 claims against Milner because I find that plaintiff has alleged facts that, if true, establish that Milner "intentionally cause[d] an infringement of rights protected by Section

---

[7] Plaintiff's Title VII claims are not asserted against Milner. See Dkt. No. 17 at ¶¶ 40-43 (asserting claims "Against Defendant Company Only").

-12-

1981," and "participated in the alleged discriminatory conduct" such that she may be held personally liable under Section 1981. <u>Al-Khazraji v. St. Francis Coll.</u>, 784 F.2d 505, 518 (3d Cir. 1986), <u>aff'd</u>, 481 U.S. 604 (1987).

An appropriate Order follows.